Opinion of Justice Drake.
This was an action prosecuted by George Maxwell against-William Henarie, administrator, &c., of David Drake, dec., in the Inferior Court of Common Pleas of the county of Hunterdon, to recover the amount of a promissory *117 note, given by David Drake, in his lifetime, to said Maxwell, for the sum of one hundred and twenty-five dollars. The defendant pleaded non-assumpsit, and payment, and subjoined a notice containing, substantially, the following allegations, *that is to say : — That [*95 the consideration of the said note was a horse sold by the said Maxwell to the said David Drake — that the said David Drake exchanged the said horse with one Imla Drake, Sen., who, in the said exchange, and in consideration thereof, agreed to pay to the said Maxwell, the amount of the said promissory note for the said horse; and that the said Maxwell agreed to take the said Imla Drake, Sen., paymaster for the same, and that he would not look to the said David Drake therefor ; and that the said Imla Drake had, {by means set forth in the said notice) paid off and satisfied do the said Maxwell, the amount of the said promissory note.
It appeared in evidence, or was admitted, that Imla Drake, .Sen. was dead; that Imla Drake, Jun., was his surviving ■executor, and also a devisee and legatee under his will; and that this same Imla Drake, Jr., was the subscribing witness to the note in controversy. He was present in the court below at the time of the trial, bud the plaintiff did not call him, but called other witnesses to prove his hand writing, and the hand writing of David Drake, dec., the maker of the note. To this the defendant objected; but the court .admitted the evidence, on the ground that it appeared by the notice, and otherwise as above stated, that the subscribing witness was incompetent by reason of interest in the cause. In this, it is said, there is error.
After the plaintiff had rested, Imla Drake, Jun., was ■offered on the part of the defendant, to prove the facts .alleged in the notice, and his evidence was rejected by the court.
Some objection was made, on the argument here, to the mode in which the interest, if any appeared, to wit, by the notice. But it appears to me that on a question of this *118 kind, the allegations contained in the notices subjoined to-pleas may be taken advantage of against tbe party making them, without the other party being precluded from gainsaying them upon the trial of the merits of the cause.
Supposing then the facts to have appeared properly to-the court, are they such as would render the subscribing, witness incompetent, and thus open the way to the introduction of other testimony to prove the note ?'
It is contended, that it appears by the facts disclosed, that Imla Drake, Sen., if living, would have been an interested *96] witness, **and that Imla Drake, Jun., his executor, is-liable to the same objection. But this does not follow. A testator may have been bound to pay, but his executor be' not bound. Imla Drake, Jun., the executor, is not a party to this suit. He is not liable to the costs of it; and therefore according to the general rule, his being executor would not exclude him. In the case of Coward v. Keyser, 5 Sergeant and Rawle, 370, where the executor was excluded, he-was a party to the suit; notwithstanding which, Gibson, justice, puts it on the ground that he had made himself ultimately liable for the debt, by his course of pleading,, having so pleaded, that, in a second action he would be precluded from denying assets.
But he is also “ a devisee and legatee under the will of Imla Drake, Sen.” A residuary legatee is clearly interested in the amount of the estate; to increase the value of it; and to oppose any claim that might diminish it. Specific legatees stand upon different ground, and may be incompetent or not, according to circumstances. If then Imla Drake,. Sen., would have been incompetent, the 'state of the case-does not contain such facts, as would certainly subject Imla Drake,-Jun., to the same disability.
But had Imla Drake, Sen., such an interest in this controversy as would have rendered him incompetent as a witness ?' The rule adhered to by courts at the present day is, that if a witness will not gain or lose by the event of the cause, or *119 if tlio verdict cannot be given in evidence for or against liim, in another suit, the objection goes to his credit only and not to his competency. And where the verdict can be used for or against the witness, no doubt the general rule is, that it renders him incompetent. But it appears to me that the law on this subject, and also as to the admission of verdicts as evidence in other suits, is laid down, by many good writers, with too little qualification. An attentive examination of the cases will shew, that there have been many instances in which the verdict might be given in evidence in a snbsequent suit in which the witness shall be a party, and yet he has not been held incompetent. Verdicts are given in evidence, or used, in subsequent suits, for various purposes. They may be pleaded by way of estoppel; or even, if not pleaded, may be so conclusive evidence that a jury ought not to find against them. Or, a verdict may operate, not upon the general question of the defendant’s liability, but merely upon the amount of damages ; and it may be entitled to more or Ness consideration upon that point, varying with the [*97 circumstances of the particular case. Or, it may be given in evidence to prove a mere introductory fact; or, to shew an amount recovered, where the evidence of the witness could not vary that amount in the original action, and where in the subsequent action against him, the verdict will not even be prima facie evidence upon any other point involving his rights. Whenever any part of the claim, or defence of a party is founded upon a judicial proceeding, it appears to me that the record is the proper evidence of it, although there may be many such cases in which the parties to the suit are not the original parties, nor strictly privies to them, in blood, estate, or law. In the case of Hudson v. Hobinson, 4 Maule Selw. 476, the court held, that the record of recovery in that case would not be evidence in a future action against the witness, any further than to show that the defendant had paid a certain sum; and the witness was admitted. In the case of Nix v. Cutting, 4 Taunton, *120 18, which w.as an action of trover for a horse, a person who accepted the horse as security for the payment of a sum of money, and afterwards, on default, sold it to the defendant, was adjudged competent to prove those facts. Sir James Mansfield, Chief Justice, says, that “as between the witness and the plaintiff', or the witness and the defendant, the verdict which is obtained on his testimony in this cause, will be of no avail to him.” It is not said, nor would it be true, that the verdict could not be evidence in any future suit against the witness. If the plaintiff had failed, and after-wards sued the witness for the horse, the verdict could not be evidence for either party; but if the plaintiff had recovered, and the defendant had sued the witness on his implied warranty, this verdict would have been evidence of the fact, that the horse, or its value, in damages, had been lost to him. But these cases, and some others, where the courts have adjudged the witness competent, and have mentioned as a reason, the inconclusive effect of the verdict upon a future action, or denied that it could be received in evidence at all, may very properly come- under a class of cases recognized, on all hands, as forming an exception to the general rule. I mean, the cases where the certain interests of the witness are not to be affected by the verdict, but whichever way it may go, his liabilities will remain equal. See Phillips Evidence, 1st vol., pages 54, 5 and 6, and cases there *98] cited in the text and notes. The case of Jones v. Brook, does not interfere with the preceding cases there stated, for it is decided upon the ground, that although the witness'would be liable in either event, of the verdict, yet that liability would be palpably greater in one event, than in the other. The case of Harwood v. Murphy, 4 Halsted, 215, is decided upon the same ground; and also the case of Poe d. Jones and others v. Wilde, 5 Taunton, 183. In this case a witness was offered to prove that he, and not the defendant, was in possession. "The Chief Justice says, “ he comes to rebut a verdict which would have the effect of *121 turning him out immediately, and that is an immediate interest, and outweighs the contrary and remoter effect of his subjecting himself by his testimony to an action.” In some of the cases decided upon this principle, this preponderance of interest on one side, is much more palpable than in others ; yet, with respect to cases of this kind generally, I think that the certain nature of the interest required, in other cases, to exclude a witness, will justify the position, that the responsibilities to be taken into the account, in comparing the effects of the different verdicts on the witness, should be reasonably certain and probable. If not likely to arise, or great ingenuity is necessary to discover them, their effect upon the mind of the witness is too doubtful to affect his competency, and they should go merely to his credit.
This case differs from that of a servant, through whose misconduct an injury is alleged to have been sustained, and his master is prosecuted for it. A servant so circumstanced, is interested to disprove the injury, to deny the whole cause of action : or to reduce the amount of •damages as low as possible, that his own ultimate responsibility may be lessened. Nor is it a case in which the witness would shift off a liability from himself to another, as in the cases in 2 Campbell, 200, and in 2 New Eepprts, 331. But here, had Itnla Drake, Sen., been offered as a witness, it would have been to remove a responsibility from another to himself: to prove a new contract which he himself was obliged to perform. So far there can be no objection, for his testimony would be rather against than in favor of himself. But he would also prove performomce of that new contract. As this is stated in the notice, this fact (performance) does not appear necessary to protect the defendant. But suppose it was, yet what is the objection *to the proof of it ? This verdict could not aid the [*99 witness on that point, if prosecuted by Maxwell. And such testimony is received in analogous cases. A party to a *122 negotiable instrument, although, according to the case" of Walton v. Shelly, he cannot prove it to have been originally void, may testify to subsequent facts, as payment, &c, Humphrey v. Moxon, Peake 52; White v. Kibbing, 11 Johnson, 128; Shuttleworth v. Stephens, 1 Campbell, 407; Rosevelt v. Gardner, 2 Pennington, 791; and Warner v. Merry, 3 Mass. 27. This last was an action by the endorsee against the endorser of a promissory note. The drawer was-offered to prove satisfaction made by him to the endorsee. And the court, although they expressly recognized the rule laid down in Walton v. Shelly, say the witness has no interest, and admitted him.
What would have been the effect of the different verdicts-which might have been rendered in this case, upon Imla Drake, Sen., had he been living ? If the verdict was in favor of the defendant, it is true that he would have no claim .against the witness; but Maxwell, the plaintiff, would have, and to the same amount which he seeks to recover in this-action; and this verdict could be no protection to the witness against such claim. If, on the contrary, the verdict-had been in favor of Maxwell, he could not enforce any claim against the witness, for he would not be permitted to-recover this money twice ; but the defendant, the administrator of David Drake, would have a claim to recover over against the witness. And although in this latter event of’ the original action, that is, of a verdict in favor of Maxwell,. I am of opinion, that under some circumstances, and to some purposes, the verdict might be used, either by the witness-to prevent a second recovery by Maxwell, if he should sue,, or against the witness, in an action by the administrator, to-shew the amount recovered against him, or that the payment was involuntary; yet, there appears to me to be such equality in the liabilities, in either event of the original action, that I cannot consider the witness incompetent. If the witness'could be made liable to the administrator of David Drake for the costs of the original fiction, it might- *123 have varied the case; but I cannot discover the principle on which that could be done. In the new contract, made by Imla Drake, Sen., there is no express undertaking to indemnify David *Drake against the old one, and the law [*100 will not imply one, as there is no fraud in the case, and the costs have arisen, not upon a matter originating with Imla Drake, Sen., and for his solo benefit, but upon a distinct contract made by David Drake for his own purposes. Upon the whole case, I am of opinion, that the Court of Common Pleas erred in considering Imla Drake, Jun., to bo an incompetent witness.