## WILLIAM B. PARTEE et ux. *v.* WILLIAM SILLIMAN.

1. POLICY—JUDICIAL—LEGISLATIVE—The policy of modern legislation and judicial decision is rather to widen the door for the reception of testimony, and to give to the party proposing the testimony the benefit of all doubts as to its competency.

2. ENDORSER—WITNESS.—The endorser of a bill of exchange or a promissory note, is a competent witness, generally, against the acceptor or drawer, for the plaintiff or defendant. But he will not be allowed to invalidate the instrument to which he has given credit by his signature.

3. SAME.—If the endorser of negotiable paper sued on has not been notified of its dishonor, he is not responsible upon it, and is competent as a witness for either party; but if he has been so notified, he is liable to the plaintiff on his indorsement, and is insufficient as a witness.

4. CAPACITY OF WIFE—AUTHORIZATION OF HUSBAND—WHEN PRESUMED.—The law of Louisiana requires the authorization of the husband to capacitate the wife to contract. Such authorization in commercial contracts is presumed if he permits her to to trade in her own name; and to all contracts where he is himself a party to them. If she subscribes a promissory note with her husband, it must be proved, in order to bind her, that the debt contracted was for her benefit.

5. WIFE'S LIABILITY—LAWS OF LOUISIANA.—The wife is liable, under the law of Louisiana, for debts contracted for her individual use, or for rendering her paraphernal property more productive, or in supporting those marriage charges which she is bound to bear. Nor is the authorization of the husband necessary to the validity of the acts necessary to the administration of her paraphernal estate.

6. LEX LOCI CONTRACTUS—LEX FORI.—Contracts and moveable property have no *situs*. Whatever is a valid disposition of personal property, according to the forms and solemnities of the place where the act is done, it is good in whatever place a right is asserted under it. For the rule of construction we look to is the *lex loci contractus*, but employ our own remedial forms in enforcing redress.

7. EVIDENCE—PRESUMPTIONS.—Where the evidence tended to show that the note grew out of transactions between the wife and her commission merchants; that they were her factors for the business and crops of her plantation in this state; that the business was conducted in her own name; and that the accounts were kept in her own name; it might be fairly inferred, therefore, that the basis of the indebtedness were supplies for her planting operations, necessaries for her family, and the education of her children.

Error to the circuit court of Yazoo county.  CAMPBELL, J.

The plaintiffs in error made the following assignments of error :

1st. The court below erred in permitting the deposition of S. O. Nelson to be read to the jury.

2d. The court below erred in granting the instructions of the plaintiff below, and in refusing those of the defendant.

3d. The court erred in rendering a judgment against William B. Partee, and also, in rendering a personal and general judgment against Sarah D. Partee, his co-defendant—she being a married woman.

*Wilkinson & Bowman,* for the plaintiffs in error.

This action was founded on a promissory note made in Louisiana, by Sarah D. Partee, a married woman, by the authorization of her husband, the co-defendant. She pleaded the general issue, the husband making no defense. There is no averment in the declaration to charge him, and yet the court rendered judgment against him and his wife, personally. If she was liable at all, judgment could not be rendered against her personally, but only against her separate estate. The instructions asked by the defendants below, was the law, and should have been given, while those for the plaintiff ought to have been refused. The averment in the declara-

tion is, that the note was given for supplies, etc., for her Mississippi plantation. The only witness, S. O. Nelson, proves that the note was given to meet other notes of Mrs. Partee, on which S. O. Nelson & Co. were indorsers, but he does not state what the consideration of those other notes was. His firm were not the factors for the Partee plantation in Mississippi, at the time the note sued on was made; and it does not seem to be connected with the Mississippi plantation in any way. The burden of proving the signature of Partee, is on the plaintiff, and he wholly failed to make the proof. 3 Phil. Ev., 172, 173; Greenl. Ev., § 569, *et seq*; Story's Conflict of Laws, § 630. See also, Daily v. Pierson, 5 La., Ann. 126; Henning's Dig., 921, art. 31; Civil Code, La., art. 2337; ib., 2341; ib., art. 124; ib., art. 2342. These authorities show the incapacity of the wife to contract in Louisiana, to be as limited as it is in our own state. See Civil·Code, art. 128, and Andrews v. Jones, 32 Miss., 275.

The law of the place or state where the contract was made, or was to be executed, must govern the rights of the parties, while the law of the forum where the right is attempted to be enforced, must govern the remedy. Story's Conflict of Laws, §§ 556, 557, 570, 572. By the law of Mississippi, judgment cannot be rendered against a married woman, personally, but it must be against her separate estate. Rev. Code, 336, arts. 25, 26, 27; Davis v. Foy, 9 S. & M., 67; Robinson v. Brauer, 24 Miss., 242. See Story's Conflict of Laws, § § 243, 244; Greenwood v. Custis, 6 Mass., 376, 479. Our married woman's law is not limited to those of our own state, nor restricted to persons; it applies, by its very terms, to the property itself. Rev. Code, 335, art. 23; Brooks v. Cross and wife, 36 Miss., 557.

The promissory note of a married woman is void by our laws. Robinson v. Bruner, 24 Miss., 242; Rev. Code, 336, arts. 25, 26. This suit being against the policy of our laws, it cannot be maintained. Knott v. Lyons, 26 Miss., 560. Again, the judgment is general, and would be levied of the lands and tenements, etc., of the defendants. Executors in such

cases are to be governed by the *lex loci rei sitæ*. Story's Conflict of Laws, §§ 354, 355; Collins v. Davenport, 1 Pick., 81; Hareford v. Nichols, 1 Paige, 220; Story's Conflict of Laws, § 366. And see Dalton v. Lyon, 26 Miss., 560. A bond, note, or account, becomes no part of the record by the simple filing of it as an exhibit. Blackman v. Reid [unreported], Lee v. Dozier, 40 Miss., 482. Again, it does not appear that the note sued on was ever read in evidence to the jury. Our statute, authorizing parties interested to testify, expressly excepts their depositions from being read. Rev. Code, 510, art. 190.

*Hudson & Nye*, for the appellees.

The power of the wife to bind herself and her separate estate as a *feme sole*, is determined by the *lex loci contractus*, which, in this case, was in the state of Louisiana. 2 Parsons on Contracts, 79, 80; Chitty on Contracts, 91, 94; 14 Vermont, 33; ib., 147; ib., 83; 9 N. Hamp., 137; ib. 271; 2 Kent (3d ed.), 453, *et seq.*; 2 Metcalfe, 8; 3 Story's C. C., 484; 10 Binney, 385; 4 Mood. & S., 249, S. C. This contract was valid by the laws of Louisiana. Civil Code of La., 270, art. 1779. The note in this case was made by the wife, with the express written authority of her husband. See Durnford v. Gross, 7 Martin, 486; Garnier v. Poydras, 13 La., 184; Hallwig v. West, 2 Ann., 1; Dickerman v. Reagan, 2 ib., 441.

This contract was valid and binding under the laws of Louisiana, where it was made, and is enforceable in the courts of Mississippi. Story's Conflict of Laws (3d ed.), 39, 40, §§ 28, 29, 30, 31, 32, 33, 34, 35; 13 Mass., 4; Story's Conflict of Laws, §§ 36, 37; 13 Peters, 519, 585. In the silence of any rule affirming or denying or restraining the operation of foreign laws, courts of justice will presume the tacit adoption of them by their own government, unless they are repugnant to its policy, or prejudicial to its interests. There is no pretense that these laws of Louisiana are either prejudicial to the interests, or repugnant to the policy of Mississippi. And see, also, the language in 2 Parsons on Contracts, 79.

It is objected that the court erred in permitting the deposition of S. O. Nelson to be read in evidence. No objection or exception was, in fact, taken or filed in writing, to the deposition of the witness; and the oral objection cannot prevail. Rev. Code, 515, art. 221. The witness was indorser on the note, and liable thereon. The Revised Code removes all such disability, if any such exists. He was no party to the suit, and no legal liability was shown against him. Independent of our statute, he was, at common law, a competent witness for the plaintiff.

Again, it is objected that the judgment is general against Partee and wife, while the suit was against the wife, and to affect her separate estate. The Code provides that suits be jointly against the husband and wife, or that the husband be joined with the wife in a suit against her. Her separate estate is liable for her valid debts. Rev. Code, 336, art. 25. But William B. Partee is shown by the proceeding to be merely a nominal party, joined in the action for the sake of mere form. The informality in the judgment does not render it void. This court has ample power to give proper form to the judgment. Rev. Code, 563, art. 11; ib., 509, arts. 186, 187; Calhoun v. Burnett, 40 Miss., 599. Rev. Code, 508, art. 181.

*W. P. Harris*, on same side.

The only objections made in the court below, were to the admissibility of Nelson's deposition, on the ground of his alleged incompetency, and to the ruling of the court on the instructions refused. There was no motion for a new trial, and objections to the evidence must be made by demurrer before verdict, or by motion for a new trial. To give the court below an opportunity to decide upon the sufficiency of evidence, one or other of these modes must be adopted; otherwise, this court will be required to decide originally on this point, and not by way of revision of the judgment below, and where, if the objection had been made, the party might have obtained all he seeks here.

An instruction as to the sufficiency of the testimony, cannot take the place of a demurrer to evidence ; and if the evidence tended, in any degree, to prove the issue, the court was bound to overrule the instruction as wholly inadmissible. That the witness was clearly competent, there can be no doubt. Greenl. Ev., 443, 444; Bayly on Bills, 594–5 ; 1 Denio, 108 ; 2 Phillipps Ev., 34. The notes show that the husband participated in the contract so far as to write on its face his authorization to his wife and his signature. This note was an exhibit to the deposition, and went to the jury as part of it, and was read to the jury without objection. It is too late to object here to want of proof of the signature.

In this aspect of the case, the instructions were clearly called for by the evidence, as the case turned upon the law of Louisiana, as to the capacity of married women to contract, and the instructions were manifestly correct. That our married woman's law applies to all married women everywhere, is very far from being true. The reverse of this is, indeed, true. Our law could only apply to married women who acquired property here under it. When or how Mrs. Partee's property was acquired, does not appear, but it does appear that it was held while the parties resided in Louisiana. The rule is, that the local law controls only as to acquisitions after residence, and then, when no contract of the marriage interferes. The case of Black v. Cross, 36 Miss., does not sustain the views of opposite counsel.

The objection to the deposition was too general to be noticed for incompetency. It is, therefore, impossible to say what was the nature of the incompetency referred to. As a general rule, the payee of a note, or bill indorsing it, is a competent witness in a suit by the indorser against the payee or drawer, for either party. The signature of Partee was admitted by the plea, and no proof as to that, was required.

*Miles & Epperson,* on same side.

But two questions are to be considered : 1st. Is the con-

tract sued on valid · by the laws of Louisiana? 2d. Will it be enforced in Mississippi? The Code of Louisiana, 270, art. 1779, provides that the "incapacity of the wife is removed by authorization of the husband." The contract sued on was authorized by the husband, as shown both by the note and the deposition of Nelson. The power of Mrs. Partee to bind herself and her separate estate, is determined by the *lex loci.* 2 Parsons on Contracts, 567, 570, 573.

By the laws of Mississippi, " all contracts made by the husband and wife, or either of them, for supplies for the plantation of the wife, etc., may be enforced, and satisfaction had out of the separate estate." Rev. Code, 336, art. 25. The deposition of the witness, Nelson, shows the contract to have been originally for plantation supplies.

SIMRALL, J. :

Sarah A. Partee, the wife of William B. Partee, co-defendant, was sued in assumpsit by William Silliman, to recover the amount due on a promissory note made and subscribed by the said Sarah A.

The errors assigned question the decision of the· circuit court, in granting and refusing instructions ; in admitting in evidence the deposition of Nelson, and in rendering judgment against Wm. B. Partee.

The objection taken to the deposition of Nelson, is that he was an incompetent witness.

The policy of modern legislation and judicial decision is rather to widen the door for the reception of testimony, leaving it to the jury to determine, as to its credibility and weight. Experience is vindicating this policy of liberality. Courts are more inclined, than heretofore, to give the benefit of all doubts as to competency, to the litigants proposing the testimony.

The objection to Nelson, though not specifically stated in the court below, is, that he was a member of the firm, who, are the payees of the note, and indorsers to the plaintiff. It is stated by Bailey in his treaties on Bills, 594, that the in-

dorser is a competent witness, generally, against the acceptor, or drawer, for the plaintiff or defendant, for, though the plaintiff's success in the action may prevent him from calling for payment from the indorser, it is not certain that he will, and if the indorser pay the note or bill, in whole or in part, he may recover from the maker, acceptor or drawer; on this point, there is great vascillation and uncertainty in the adjudged cases.

The exclusion of a party, to a negotiable instrument, from testifying to facts which impeach the validity of the paper in its inception, rests upon grounds of public policy. The reason given by the judges, is that a party, who, by his name, has given credit and currency to the paper, shall not be permitted to prove that it was void—this would be to enable him to impose upon the public, by a fraud. Of this class, is the case of Warren v. Merry, 3 Mass., 27. In Brown v. Babcock, 3 Mass., 29, it was said the rule was confied to negotiable paper, and, that when the testimony was offered to explain and not invalidate, it was competent; and, in Hill v. Payson, 3 Mass., 559, the court remarked that the common law rule never went further than to exclude a witness from invalidating an instrument to which he had given credit by his signature, and the later cases confined the rule to parties on negotiable paper who had by their acts given it currency. Such is, also, the rule in Pennsylvania. Bank of Montgomery v. Walker, Serg. & Rawle, 113; Griffith v. Bedford, 1 Rawle, 196. So in Maine. Deering v. Sawtel, 3 Greenl. 191. In South Carolina and Virginia, such parties are not disqualified, because of being on the paper. 2 Bay, 93; 3 McCord, 71; Taylor v. Beck, 3 Rand., 316.

In Louisiana, whilst a party to negotiable paper may not be heard to invalidate it at the time it passes from him, yet, it is said the rule is of modern origin, and such person is competent to prove subsequent facts, such as an alteration in the note after indorsement. Shamburg v. Commegro, 10 Martin, 18; Cox v. Williams, 6 ib., 139. In the noted case of Walton v. Shelly, 1 T. R., 206, an exception as to compe-

tency, was .engrafted, to the effect that parties to deeds or other papers, shall not be permitted to give testimony to invalidate the deed or paper. Subsequently, in Jordan v. Lashbrook, 7 T. R., 759, the rule was replaced on its ancient foundation, that all persons are competent, except such as are disqualified by interest, or are infamous. In Ruth v. Helm, 6 How., 129, Walton v. Shelly, was followed, but limited to those facts which went to invalidate the paper in its origin, or at the time the party passed it off. The maker, against whom judgment had been recovered, was a competent witness for the indorser. Prof. Greenleaf says, subject to this exception (which rests on considerations of policy): "Such persons are competent witnesses for or against other parties to the paper, unless they are interested." 1 Greenl. Ev., 399.

If Nelson has been notified of the dishonor of the note, he is liable directly and immediately to the plaintiff, on the indorsement of his firm. This is a primary and independent responsibility, upon which suit could be immediately brought, and having been incurred in Louisiana, where the strict *lex mercatoria* prevails, he is obligated, no matter what may be the state of equities and defenses between other parties. If Nelson has not been notified, he is not responsible to the plaintiff, no matter what may be the result of this suit.

· Now, the facts deposed to by this witness, do not impeach the paper in its origin, or at the time it was indorsed. As to every other class of facts, he is as competent as any other witness, unless interested.

The note bears date in Louisiana, and is payable there ; so that as a contract, it is domiciled in that state. Moreover, it is proved that Partee and wife were at that time residents of New Orleans.

It is a general rule, that a contract, for its validity, obligation, and construction, is to be governed by the law of the place where made. If made with a view to execution elsewhere, then the place of its execution may furnish the rule. But when the *locus contractus* and the place of performance

are the same, there is no difficulty as to the law that applies. There is much discussion among the jurists of the civil law, where one of the contracting parties is under a disability such as coverture, whether the law of the place of marriage, or of the matrimonial domicile, or of the place of the contract (if the wife enter into a contract in a state other than her domicile), applies to the transaction, as to her competency to do the act. The weight of authority among civilians, is perhaps in favor of the law of the domicile.

As we have remarked, Partee and wife were resident in Louisiana, where this note was made. The question is, does the note, by the law of that state, bind her?

The Civil Code, art. 1779, requires the authorization of the husband, to capacitate the wife to contract. This authorization in commercial contracts is presumed, if he permits her to trade in her own name, and to execute all her other contracts, where he is himself a party to them.

In 1791, a husband and wife were domiciled in Louisiana, the wife placed in the husband's hands a sum of money, to be used in an adventure in Philadelphia, to be repaid, if he did not return. Many years afterwards, in 1820, the husband died in Philadelphia, never having returned, or repaid the money. On proof made that such contract was valid by the law of the Louisiana territory, the wife was permitted to recover from the husband's executors in Pennsylvania.

Dougherty v. Snyder, 15 Serg. & Rawle, 84, a woman, *dum sola*, indorsed a note; after marriage, she waived demand and notice. This last contract of waiver, not having been sanctioned by the husband, did not bind her. Marshall v. Overby, 10 La., 162. This authorization must be expressed; if she subscribes a promissory note with her husband, it must be proved that the debt contracted was applied to her use.

Durnford v. Gross and wife, 7 Martin, La., 489, the wife was sued for merchandise and services rendered; the defense interposed, was that all her property was paraphernal, which was under the administration of the husband; it was held that the wife was liable for debts contracted for her individ-

ual use, or for rendering her paraphernal property more productive, or in supporting those marriage charges which she is bound by law to bear. Dickerman. v. Regan, 2 Ann., 441. Nor is the authorization of the husband necessary to give validity to her acts, necessary to her administration of her paraphernal estate. Same case.

Civil Code La., 4, · art. 910, " The law is obligatory on all the inhabitants of a state, indiscriminately ; the foreigner whilst residing there, and his property within its limits, are subject to it."

" The form and effect of public and private written instruments, is regulated by the laws of the country where they are to have effect."

Civil Code, art. 2412, " The wife, whether separated in property by contract, or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during marriage."

In Bank of Louisiana v. Farras et ux., 2 Ann., 49, the note and a mortgage on the wife's property, in Rapides parish, Louisiana, were dated at Woodville, Mississippi, and perhaps Farras and wife were residents there. The rights and obligations of the parties were adjudicated under the law of Louisiana. This would follow from the rule laid down in the article of the Civil Code last quoted.

Contracts and movable property have no *situs*. Whatever is a valid disposition of personal property according to forms and solemnities of place where the act is done, is good in whatever country a right is asserted under it.

The foreign forum refers to the *lex loci contractus* for the validity and construction of the act, employing its own remedial forms in supplying redress. Comity enjoins· upon all civilized countries to furnish to the complaining party, a proper remedy and redress, if he comes into the foreign forum to implead his adversary. Nor can the remedy be denied, unless it conflicts with the interests, the policy, or the morals of the country or the people, where the suit is brought.

The testimony tended to show that the contract was such as a married woman owning separate property could make in this state.   The note in suit grew out of transactions between Mrs. Partee and her commission merchants in New Orleans.   They were her factors for the business and crops of her plantation in Yazoo county.   This business was conducted in her own name, and so were the accounts kept.   It might be fairly inferable, therefore, that the basis of the indebtedness was supplies for conducting planting operations, the amelioration and improvement of her estate, necessaries for her family, and the education of children.   If Mrs. Partee impugned the indebtedness, as not for legitimate objects, it would have been more satisfactory had she supplied full evidence, as to the nature of the dealings, between herself and Nelson & Co., especially in view of the evidence offered by the plaintiff on that point.

We think substantial justice has been done, and therefore affirm the judgment.